Okay. Good morning, Your Honors. May it please the Court. My name is David Poore and I represent the Plaintiff and Appellant in this case, John Whitworth. What I'd like to do this morning, I know that we've briefed these issues extensively. I'd like to point out what I consider to be the highlighted areas of the Court's order in which we believe the District Court erred. Number one is the question of the property interest with respect to the sexual harassment policies and procedures at the University, and whether or not those procedures contain protections in them for an employee that's been accused of sexual harassment in the workplace. And in particular, does it meet the standards set forth in lore, which states that procedural requirements standing alone are typically not enough to convey some type of property interest, unless there is a significant restriction on the decision-making process. We would argue before this Court, as we did in our brief, that they do. That the sexual harassment policies and procedures are very clear. They state that when a manager becomes aware of a complaint, and that's an anonymous complaint, that could be a third-party complaint, that can be a complaint from any source. It's not restricted to written complaints. When the manager becomes aware of a complaint, the manager must and shall forward that complaint to the Title IX office for the investigation. The investigation contains many protections for all employees that are accused of sexual harassment. Those protections are very akin to criminal justice protections. That's how high they are. You have an opportunity to respond. You have representation. You have a right to interview witnesses. You have a right to have either an attorney or an attorney. Does that have to do with an asserted property interest, or does that have to do with an asserted liberty interest? I believe it has to do with a property interest. The distinction with the liberty interest is that if an employer accuses an employee, a public employee, of some type of act of dishonesty, some type of act of moral turpitude, some type of act of what I guess I would consider to be some type of reputational harm in connection with a termination, then they're required to give that public employee a pre-termination hearing. The property interest is a little bit different. Go ahead. I'm sorry. You're getting it. The property interest is a little bit different because the property interests are created by state law or state regulations, ordinances, rules, policies and procedures, contracts. You think of the property interest as having a property interest in continuation of his job. Absolutely. Really, we're talking about here, isn't it? Absolutely. And we would argue that the property interest created by the sexual harassment policies and procedures specifically protects an employee when that employee is charged in the workplace with sexual harassment. And these protections contained within those policies and procedures are a significant limitation. But he didn't have a property interest in his job, but being charged in this fashion, all of a sudden he does. I don't think that's what our argument is, but we have to understand for purposes of property interests that an employee that's a probationary employee, for example, and there's a lot of cases that discuss this, they may not have a property interest with respect to being released or retained after the expiration of their probationary period, but they may have property interests in employment that are created by certain regulations or statutes, and at least with respect to this specific case, you've got sexual harassment policies and procedures that protect all employees. And so the property interest, the question is, it really depends. It depends upon what the regulation states. It depends upon what the contract states. It depends upon the multitude of factors to determine whether or not there is a recognizable property interest given the situation at hand. And here the situation was an allegation of sexual harassment. Would you indicate that that is based upon the contract with the union? Is that what it is? It is partially based upon the contract with the union. The collective bargaining agreement in Article VI specifically incorporates the sexual harassment policies and procedures for all employees of the bargaining unit, not just non-probationary employees, but all employees. The collective bargaining agreement is a defined term. It's different than a non-probationary employee. The term employee applies to all of the bargaining unit employees at the UC Berkeley campus and the Lawrence Berkeley laboratory. That's defined in Article II.C.2. And that's one of the crucial distinctions we make in this case, is that the collective bargaining agreement provides some protections for certain employees, and it provides some protections for non-probationary employees. And the sexual harassment guidelines, which are incorporated in the collective bargaining agreement, apply to Mr. Whitworth. And that's a very crucial distinction here. So we would certainly argue, as we did before, that you have to look at the totality of the circumstances, and you have to look at the facts of the case. The totality of the circumstances show a property interest is created by these very stringent protections contained in the sexual harassment policies and procedures. And the problem that we have with the court order is the judge just didn't address it. There's nothing in the court order that discusses it, despite the fact that that was part of our primary allegation in our Second Amendment complaint, and that was one of the bases for our opposition before the trial court. So that's where we believe at least the court erred with respect to these procedures, is that the university had them, and nothing was followed with respect to them. And that's important to recognize because the university's, excuse me, the defendants, the individual defendants, only response in their brief to our claim that the sexual harassment policies and procedures create a property interest, they simply say, well, Ms. Parks didn't complain, or the university didn't consider this to rise to the level of sexual harassment. Now, the problem with that is, is that the court correctly determined in its order in footnote three that that's a disputed question of fact, that there's evidence on both sides with respect to that. So really there's no opposition in the response to this. Suppose we disagree with you on the property interest. Do you want to address the liberty interest? I would like to address that. We believe the court erred in two respects. One is taking a look at this grievance file. The court determined it was not derogatory or not stigmatizing in nature. We would urge the panel to take a look at the totality of the grievance file. You've got communications dated from July 17th up until September 16th. Which makes it a little tough to do. Oh, I can give you the citations to it. I thought, well, I mean, I just don't have it. It was not furnished, the grievance file. Oh, it was part of the discovery responses. I can – It will be. My point is, I personally, me, do not have it because it wasn't furnished. In the record. In the record. I don't have it. My understanding is that there were two things in it. Is that wrong? That is wrong. That's wrong. The grievance file – I understood there to be the dismissal letter and the September 16th letter. That's what I understood it to consist of. Is that wrong? That's inaccurate. The grievance file consisted of a series of correspondence. I can only go on what appears to me. I can provide you with the citations. Look, the more important question I have is, if you go to the Lewis September 16th letter, which appears to be the big culprit, precisely what is it in there that is stigmatizing? I think if you take a look at it – But – but, aside from being unpleasant, what's stigmatizing? Well, I think if a reasonable employer or a reasonable reviewer were to take a look at this, if you look at paragraph 2, Mr. Lewis basically admits that he went through these allegations of sexual harassment in the June 20th meeting. He admits that they asked him, what did they say? Meaning, why was I fired? And then he admits that I thought your question referenced issues relating to Mr. Whitworth's interaction with Mr. Park, so I did go into those issues. Well, that's because he asked him the question. I'm sorry? He asked all these questions. I mean, Mr. Whitworth did, right? So Lewis is not volunteering anything. He's responding to a request from Mr. Whitworth. But the problem – I'm just asking what in his response was stigmatizing. When you have a union asking an employer, before the grievance process is even initiated, why was this employee fired? And the university gives an official position to the union and provides five specific instances of sexual harassment – sexual touching, bending over, sexual comments – and then later on shifts away from those. And that's exactly what – I'm sorry? It's in this letter? And again, if you take a – if you look at all of the correspondence in total – In total. And this letter says there's no – there – the university has never characterized Whitworth's interactions as arising to the level of harassment. I mean, that's clearing. That's not stigmatizing. But it goes on to state in the letter that they asked for the reasons, and they said in the June 20th meeting that Mr. Whitworth was counseled on sexual harassment and that he was fired for the Darlene thing. So there's a real question, I think, if an employer looked at this, to what extent they would say, hey, what's going on here? But that's not stigmatizing just because a prospective employer may be confused about what actually happened. How is that stigmatizing? Well, if a prospective employer looks at this, they're going to say to the employee, what happened here? And the employee's got to tell the truth. But that's not stigmatizing. If the employee tells a prospective employer something that happened on the job, that's not stigmatizing, because it's not publication from the offending source. How can that be a violation of the liberty of interest if the person, him or herself, says what happened? That can be stigmatizing. Well, republication is acceptable if the records are still there. It's republication by the person who's making the claim, so they can just go out and tell the world something and then say, you stigmatized me because I went out and told the world something that happened? No. The case authority supports that argument. And that's not what we're trying to argue, that the employee's going to go out and just publish himself. I think what the courts recognize, it kind of puts the employee in an awkward situation when they go for employment. Tell me a case that says when a prospective employee reports something that happened in a past employment, that that's publication for purposes of the liberty of interest. What case says that? The lower case touches upon that. What the lower case says is if the employee has to republish, it's not a liberty of interest violation. But there has to first be a publication for republishing. So where would the first publication be in that instance? Well, in that instance, the first publication is on June 20th when the employer tells the union and the employee the official reason for termination. That starts the ball rolling. So what case authority supports the argument that if an employer tells a union representative and the affected employee of the reason for termination, that that's publication for purposes of the liberty of interest? What case says that? There is no case that says that. That I can find in my research. I see my time is up. Okay. Thank you. Mr. Foreman. Thank you, Your Honor. Good morning. May it please the Court, Laurie Sobransky, on behalf of the individual defendants and appellees. I'd like to start on the question of the liberty of interest, since that's where we left off, and I think that's probably something we can dispense with fairly readily. The Court keyed on exactly  that. There is no publication by any of these individual defendants of any kind of stigmatizing information. Judge Reimer is exactly correct. There are two documents in the grievance file that's in this record. It's the letter that Mr. Lewis authored on September 16. As you've just discussed, there is nothing stigmatizing in that letter. It actually clears up any confusion about these sexual harassment allegations. The second thing to know about that grievance file, though, that we didn't talk about is it is not disclosed to the public. The California Public Records Act excludes personnel files and similar files which would include a grievance file that has these types of complaints and personal information in it. That would certainly seem to me to be that very essence of a personnel file. I was puzzled by why that could ever be disclosed. You're exactly right. And that's what the purpose of the California Public Records Act does, was it made some exemptions so that that kind of information would not be made public. So even if that letter of September 16 were deemed stigmatizing in some way, it still is not a publication that would satisfy the requirements for a due process violation. Counsel, are there any California cases that equate grievance files to personnel files so that it's clear that these files would not be produced? You know, I found none. I think the term grievance file is a unique label that the California Public Records Act uses. It's obviously going to be broad enough to encompass all those types of files, no matter what label they're given by any particular employer. So I would read the California Public Records Act as when it says personnel or similar files to be an inclusive phrase that would include all files containing the type of information that you might find in a personnel file, which is what the grievance file information is. The next point I'd like to mention is the fact that, you know, you don't have a publication because you're talking about allegations to people that are necessary for the whole employment process to run its course, union representatives, managers, other people in the human resources department. Every piece of evidence in this record shows that these allegations as plaintiff characterizes them were discussed only with people that were necessary to getting this process resolved, a process which, by the way, Mr. Whitworth himself pushed to have employed. It was not a process that the university would have employed on its own. They were accommodating him, and all of these discussions were done in the context of resolving this claim to conclusion, part of the necessary process. You asked if there was a case, Judge Kagan, that would constitute a publication. The law is actually quite clear to the contrary, and it's even back to Bishop v. Wood and Learned v. Bellevue and the other cases cited in our brief that it has to be a disclosure to the public, not to the people within the employee's realm that were necessary to the process. The other point I'd like to make about that letter of September 16th, which I should have made before, is that was a letter that was authored by Mr. Lewis. It was not authored by or published by any of the individual defendants who are being sued here. So you can't even attribute it to them for purposes of their individual liability. In terms of self-publication, and then I'll move on to property, this was an issue that Your Honor brought up. The law on this issue is that if you are the plaintiff, the employee that was discharged, and you are the one that is telling the public, publishing the bad facts yourself, that that is not publication for purposes of the Fourteenth Amendment, and that's the Lamas v. Butte Community College case, and that's pretty clear. So I think that covers all the liberty issues. Unless you have any further questions, I'll move on to property. Okay. I have a question on the property interest. Yes. Can a collective bargaining agreement create a property interest in a job? Well, if the collective bargaining agreement by its term said you are guaranteed continued employment for the rest of your life, I suppose it could. This collective bargaining agreement, however, says in many places within the agreement that as a probationary employee, you can be dismissed at the sole discretion of the university, and you are not entitled to any of the grievance procedures that permanent employees are entitled to. So this collective bargaining agreement actually would remove any possibility of an employee who is terminated during his probationary term to have any kind of continued interest in employment. Why did they give him the grievance procedures then? I'm sorry? Why were the grievance procedures employed? Well, as Mr. Lewis said in his declarations, they did it as an accommodation to the union to try to foster good labor relations. And they were trying to be nice, and no good deed goes unpunished, and here we are. But that was why. And Mr. Lewis's letters are very clear throughout, and his declaration says the same thing. And they were always the communications with the union was you are not entitled to this, but we will talk to you and we will meet with you at your request in the interest of good relations with you. So that's why that happened. I believe that the reason why Judge Chesney's order does not talk about this sexual harassment policy as being important or effective on the property interest is because it doesn't matter. The first thing to know about the sexual harassment policy is it does apply some kind of notice provisions to people that have been accused of sexual harassment in the past year. This is a huge red herring. That sexual harassment policy is triggered upon a written complaint of sexual harassment. I'm not sure what policy counsel is referring to when he was talking to you in his argument, but the sexual harassment policy that was applicable at this time is at pages 308 to 311 of the record. And that policy says if it's a written complaint, we start these notice procedures. And, by the way, if we find out that there is something to all this, the grievance procedures in the collective bargaining agreement are going to apply then to take care of the problem. But none of it matters, because in this case the sexual harassment provision just didn't apply from the get-go. No written complaint was filed. That's undisputed. UC did not believe there was sexual harassment at all. That is undisputed. There's no evidence. Is that really undisputed? It is complete. Here you have a probationary employee that gets superior ratings for his performance. Then all of a sudden we have this complaint, and all of a sudden he's no longer going to be employed. Well, here's what happened. He was doing fine at the beginning, but Ms. Park came or actually her friend initially came to the manager, Ms. Lunsford, and said, Ms. Park is uncomfortable with some of the interactions that have been happening with Mr. Whitworth in the workplace. Ms. Lunsford talked to Ms. Park. Ms. Jones, the HR person, talked to Ms. Park. Neither one of them concluded that this rose to the level of sexual harassment. Ms. Jones concluded, oh, nothing more needed to be done. It wasn't that kind of a problem. But Ms. Lunsford did what any good supervisor would do. She had a meeting with Mr. Whitworth and said, look, you have to be careful about how you interact with people in the workplace. We have these jobs. She went over specific issues with the performance of projects that he was doing. They reviewed it all. And what happened was he got very agitated about it and he didn't respond well to it. So Ms. Lunsford's problem with Mr. Whitworth was not this fact of a sexual harassment claim. It was, as she describes in all of her declarations, in her testimony, that he didn't seem to be able to handle constructive criticism. In the days that followed the meeting, he wasn't working well. He was unable to really perform his job. And he was not listening, essentially, to what she was saying. So she made the judgment, which she was completely entitled to do with him as a probationary employee, that he's not really a good fit for me and for this department. And the reason she asked that his probationary termination be terminated was for that reason. That's what Ms. Lunsford says, Anderson, Hawkins, Lewis, Jones, everyone at the university that was involved. Ms. Lunsford. Counselor, your time is running out. I want to ask you to address briefly the argument that the appellant was promoted and therefore was no longer a probationary employee. Yes. The appellant says that he was promoted, but that's just his subjective belief in your status as a supervisor is not enough. What is undisputed in this record is that he was always a probationary employee. All of the UC witnesses have testified, personnel have said that. The personnel action form confirms that, and that was interpreted correctly by Ms. Jones, who knows how to read that for you. Ms. Lunsford, you have to meet the requirements of the government code, which means you have to have hiring and firing and disciplinary responsibilities. He never had that, and no administrative person in his classification had ever had that. That's all testimony that's in the record. There was no change, and he admits this, there was no change in his position, no salary change, no additional training, no change in his job description, no change in his classification, nothing that would be normal indicia if you were to have been suddenly promoted to a supervisory position. And he received no letter telling him that he had passed the probationary period, which is part of the normal UC process also. Finally, I think it's important to know that in his deposition, which was taken long before this motion was filed, he admits that he was a probationary employee. So the only evidence we have that he was no longer a probationary employee is the declaration crafted to defeat this summary judgment motion, and that is only relies upon his own understanding, I think is the word in the Thank you very much. Thank you. The matter just argued will be submitted. And we'll next hear argument in O'Connell. Thank you.
judges: Hug, Rymer, Rawlinson